UNITED STATES of America,
Plaintiff–Appellee,

v.

Bonnie Ann DURHAM, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerome Sherman STANLEY,
Defendant–Appellant.

Nos. 90–10022, 90–10049.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 17, 1991.

Decided Aug. 7, 1991.

Margaret A. McKnight, Fresno, Cal., for defendant-appellant Jerome Stanley.

Jerome Stanley, in pro per.

Jesse Cordova, Lodi, Cal., for defendant-appellant Bonnie Ann Durham.

Nancy L. Simpson, Asst. U.S. Atty., George Williamson, Sp. Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before SCHROEDER, PREGERSON and NELSON, Circuit Judges.

THOMAS G. NELSON, Circuit Judge:

We are asked to determine whether methamphetamine is properly listed in Schedule II of the schedules of controlled substances established by the Controlled Substances Act. 21 U.S.C. §§ 811, *et seq.* For the reasons stated we hold that the presence of methamphetamine as a component ingredient of certain over-the-counter drugs has no effect on the inclusion of methamphetamine as a Schedule II controlled substance. We also hold that the defect in appointment of a Special Assistant United States Attorney requires a remand to the district court to determine the extent of the supervision and control exercised by the United States Attorney's Office.

I

Appellants Jerome Stanley and Bonnie Ann Durham were convicted of several offenses relating to the manufacture and pos-

session of methamphetamine. Only Stanley has raised issues relating to methamphetamine as a Schedule II substance. Stanley did not raise his primary contention concerning whether methamphetamine is properly placed within the schedules of controlled substances in the trial court. This contention will be reviewed for plain error. *See United States v. Hernandez*, 876 F.2d 774 (9th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 179, 107 L.Ed.2d 135 (1989); *United States v. Bustillo*, 789 F.2d 1364 (9th Cir.1986). This issue is discussed in this opinion because if Stanley's contentions were upheld, the other questions raised would be moot as the indictment would be flawed.

A brief review of the structure of the statutory and administrative regulation of "controlled substances" will put Stanley's arguments in context. Section 812 in Title 21 of the United States Code creates five schedules of controlled substances labeled I through V. The substances with the most potential for abuse or risk from use are in Schedule I, with declining risk in the following schedules. The punishment for conviction of possession or distribution of the listed substances generally follows the same pattern, with more severe punishments for convictions under Schedule I than Schedule II and so on.[1] Congress initially listed specific drugs under each schedule. However, 21 U.S.C. § 811 authorizes the Attorney General, by regulation, to move substances between schedules or add substances to or remove them from the schedules.

The current version of the regulations specifically designates methamphetamine as a Schedule II controlled substance, consistent with earlier versions going back several years. 21 C.F.R. § 1308.12. The regulations also exclude certain substances determined to be non-narcotic, including

Rynal Spray and Vicks Inhaler, which may contain small amounts of methamphetamine. 21 C.F.R. § 1308.22.

Basically Stanley argues that methamphetamine is not a Schedule II controlled substance. This issue can more properly be characterized as containing the following three sub-issues: (1) whether methamphetamine is still a Schedule III, rather than a Schedule II controlled substance; (2) whether methamphetamine has been specifically excluded as a controlled substance; and (3) whether the court erred in failing to instruct the jury that they must find, as an element of the offense, that any substance called methamphetamine must be found to be a central nervous system stimulant before it is a controlled substance. We address each issue in turn.

**A**

■ The first question is whether methamphetamine was properly listed in Schedule II of the schedule of controlled substances. The most Stanley can hope to gain by this contention is a challenge to the sufficiency of the indictment which charged him with possession of a Schedule II controlled substance.[2] The sufficiency of an indictment is reviewed *de novo. United States v. Tuohey*, 867 F.2d 534, 536 (9th Cir.1989).

Methamphetamine was originally listed in Schedule III by Congress, and later moved to Schedule II by the Attorney General. The crux of Stanley's argument is that the Attorney General improperly delegated his authority to reschedule controlled substances. Stanley acknowledges that we have previously examined this issue and reached a contrary result. *United States v. Jones*, 852 F.2d 1235 (9th Cir. 1988); *see United States v. Burnes*, 816 F.2d 1354 (9th Cir.1987). Stanley argues

---

1. The original statutory scheme has been changed, so that the general rule no longer applies to methamphetamine, at least. See footnote 2, *infra.*

2. Stanley's argument could be interpreted as a contention that his sentence is illegal. However, Title 21 U.S.C. § 841(b) now provides that anyone violating subsection (a) with 100 grams

or more of methamphetamine shall be sentenced to not less than ten years or more than life. Thus, the distinctions between the schedules no longer matter in crimes involving methamphetamine for the purpose of sentencing. Therefore, Stanley would gain nothing with the argument that his sentence is illegal.

that this court reached the incorrect conclusion in *Jones* because the court confused an "annual publication" in the federal register, required by 21 U.S.C. § 812(a), with the lengthy procedure required by sections 811(a)(b) and (c) before a substance can be rescheduled. We are bound by previous decisions of this circuit. *See United States v. Mandel*, 914 F.2d 1215, 1221 (9th Cir. 1990).

Even assuming we were free to do so, we would decline Stanley's invitation to revisit the issue in light of this court's decision in *United States v. Kendall*, 887 F.2d 240 (9th Cir.1989). The *Kendall* court concluded "[w]hether or not DEA ever followed the procedures and made the findings required to reschedule methamphetamine the [Bureau of Narcotics and Dangerous Drugs] did so in 1971." 887 F.2d at 241. It is no longer an open question whether methamphetamine has properly been designated a Schedule II controlled substance.

## B

We next examine Stanley's contention that methamphetamine has been specifically excluded as a controlled substance. Stanley maintains that since methamphetamine is not a controlled substance, the indictment was flawed, requiring reversal.

The Controlled Substances Act provides a method for designating certain substances as legal:

> The Attorney General shall by regulation exclude any nonnarcotic substance from a schedule if such substance may, under the Federal Food, Drug, and Cosmetic Act [21 U.S.C.S. §§ 301 et seq.], be lawfully sold over-the-counter without a prescription.

21 U.S.C. § 811(g)(1).

Stanley argues that methamphetamine is no longer a controlled substance because the Attorney General has excluded the drug from the schedule of controlled substances. Specifically, Stanley cites 21 C.F.R. § 1308.22, which contains lists of excluded nonnarcotic over-the-counter substances. Within these lists are two compounds containing, as an ingredient, methamphetamine or its equivalent. One is des-

ignated Rynal, the other Vicks Inhaler. The list of excluded nonnarcotic, over-the-counter substances designates each substance by trade name, dosage for its composition, potency and the manufacturer or distributor. Since Rynal and Vicks Inhaler were specifically excluded by the Attorney General pursuant to 21 U.S.C. § 811(g)(1), Stanley maintains methamphetamine is not a controlled substance.

Stanley's argument has no merit. To begin with, his argument is contrary to the specific command of the regulations which, in regulating stimulants under Schedule II, provide:

> (d) Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:
>
> * * * * * *
>
> (2) Methamphetamine, its salts, isomers, and salts of its isomers.

21 C.F.R. § 1308.12 (April 1, 1989 ed.). This court has repeatedly concluded, as we have again in this opinion, that methamphetamine has been properly designated a Schedule II controlled substance. *United States v. Kendall*, 887 F.2d 240; *United States v. Jones*, 852 F.2d 1235; *United States v. Alexander*, 673 F.2d 287 (9th Cir.), *cert. denied*, 459 U.S. 876, 103 S.Ct. 168, 74 L.Ed.2d 139 (1982).

In contrast, Rynal Spray and Vicks Inhaler have been designated nonnarcotic over-the-counter substances. 21 C.F.R. § 1308.22 (April 1, 1989 ed.) These two products contain methamphetamine or a derivative as a part of a combination of ingredients and in such amounts as to be much less likely to be abused, thus enabling the substance to be used for its medicinal values. The functional difference between methamphetamine itself and the non-narcotic compounds containing methamphetamine as an ingredient is clear and is the basis of the different treatment they are accorded by the regulations. The mere inclusion of a controlled substance as an ingredient in a nonnarcotic nonprescription

drug does not alter its status under the Controlled Substances Act.[3]

Moreover, if we were to interpret the statute as Stanley suggests, we would be giving no effect to the Attorney General's decision to designate methamphetamine as a controlled substance. There is no conflict between the listing of methamphetamine in Schedule II and the exclusion of the two products from all schedules, since effect can be given to both regulations. The possessor of a Vicks Inhaler or Rynal could raise 21 C.F.R. § 1308.22 as a defense to a charge of possession of methamphetamine. The possessor of methamphetamine, such as Stanley, is not shielded by the exemption of Vicks Inhaler or Rynal. Accordingly, we conclude that Stanley's proposed interpretation of the regulation is inconsistent with the structure of the statutory and administrative scheme and, therefore, must fail. *See United States v. Schrock*, 855 F.2d 327, 332 (6th Cir.1988).

### C

■ Next, we address the issue of whether the trial court erred in failing to instruct the jury that the prosecution must prove that methamphetamine is a central nervous system stimulant.[4] This issue was raised at trial. Whether the district court's instructions to the jury misstated the elements of the crime charged involves a question of law subject to *de novo* review. *United States v. Spillone*, 879 F.2d 514, 525 (9th Cir.1989), *cert. denied*, —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

We cannot agree with Stanley's argument that, since the Code of Federal Regulations[5] characterizes methamphetamine as having a stimulant effect on the central nervous system, it imposes a duty upon the prosecutor to prove beyond a reasonable doubt that methamphetamine has a stimulant effect on the central nervous system. Stanley maintains that the reason for this requirement in the jury instruction is to insure that the substance seized from the defendant is indeed methamphetamine.

This argument also lacks merit. We can ascertain no sound reason why Congress or the Attorney General would impose such a superfluous requirement on prosecutors. Section 1308.12 describes certain drugs as central nervous system stimulants. Methamphetamine is one of the listed drugs. Therefore, the government need not prove methamphetamine is a central nervous system stimulant, since the regulation has already defined it as such. We join other circuits in rejecting this contention. *United States v. White*, 560 F.2d 787 (7th Cir. 1977); *see United States v. Nickles*, 509 F.2d 810 (5th Cir.1975); *see also United States v. Picklesimer*, 585 F.2d 1199 (3rd Cir.1978). Proof beyond a reasonable doubt that the substance charged is methamphetamine is sufficient.

Stanley's argument might also be interpreted as saying that the listed drugs must be shown to be present in a *quantity* sufficient to stimulate the central nervous system. This is not the proper reading of the regulation, as the central nervous system language was intended as guidance for the Attorney General when, upon the appear-

---

**3.** Our conclusion is consistent with portion of the regulations which states:
> Nothing in ... 1308 ... shall be construed as authorizing or permitting any person to do any act which such person is not authorized or permitted to do under other federal laws ... nor shall compliance with such parts be construed as compliance with other federal or state laws unless expressly provided in such other laws.

21 C.F.R. § 1307.02.

**4.** The court instructed the jury that "as a matter of law, methamphetamine is a Schedule II controlled substance as that term is used in the instructions and the statutes just read to you." The court further stated:

> You must, of course, ascertain whether or not the material in question was in fact methamphetamine. In doing so, you may consider all evidence in the case which may aid the determination of that issue, including the testimony of any expert or other witness who may testify either to support or to dispute the allegation that the material in question was methamphetamine.

**5.** Stanley bases his argument on the wording of 21 U.S.C. § 812 as originally written under Schedule III. However, as we have already noted, that same wording has been transferred to Schedule II. *See* part IA hereof.

ance of new drugs, those producing similar effects need to be listed. *United States v. Picklesimer*, 585 F.2d 1199, 1203 (3rd Cir. 1978). Accordingly, the district court did not err in refusing to instruct this jury that it must find that methamphetamine is a central nervous system stimulant.

In sum, we hold that methamphetamine has been properly designated in Schedule II of the schedules of controlled substances. We further hold that methamphetamine has not been specifically excluded from the schedules of controlled substances. Lastly, we conclude that the trial court did not err in refusing to instruct the jury that the government must prove that methamphetamine is a central nervous system stimulant.

## II

Stanley argues that George Williamson, operating as a Special Assistant United States Attorney in this case, was not properly authorized to present the government's case either at the grand jury or at the trial. Stanley further maintains that as a result of this defect the district court was divested of jurisdiction to proceed in this case. We include Durham in the discussion of this issue since it will affect her appeal also.

## A

To fully examine the issues presented to us, we must recite the relevant procedural and factual background. On February 27, 1989, Stanley, then represented by Richard Walker, filed a motion to dismiss the indictment and for the disqualification of Sacramento County District Attorney George Williamson. In that motion Stanley argued that personnel from the Sacramento County District Attorney's office may not legally act as Special Assistant United States Attorneys because the duties of district attorneys are limited to state law. Stanley also argued that there was a personal conflict between him and George Williamson. Stanley did not then argue that Williamson was improperly appointed as Special Assist-

ant United States Attorney under 28 U.S.C. § 543. The district court denied the motion. No other pretrial motions were filed with regard to this issue.

On June 13, 1989, (the third day of trial) Barry Nix, then counsel for Stanley, asked the court to compel Williamson to provide Stanley with documentation regarding his appointment. The court took the request under submission. Following completion of the jury trial, codefendant John Hanoum filed a motion for dismissal of the indictment because of improper authorization of George Williamson to act as Special Assistant United States Attorney.[6] Stanley joined this motion. On November 1, 1989, the district court denied this motion as being untimely.

Stanley and his codefendants subpoenaed documents pertaining to Williamson's appointment. The district court ordered these documents to be produced, under seal, pending its decision on the timeliness of the motion. However, the district court concluded that the motion was not timely and ordered that the documents remain sealed. Stanley appealed the decision to seal the documents. This court denied Stanley's motion to remove the seal on the documents without prejudice to renewal of the motion before the district court. Stanley renewed his motion to unseal the documents. The district court granted the motion.

Among the documents released from seal included a letter to Mr. Williamson from Mark O. Wilkoff, dated September 30, 1988. This letter purported to appoint Mr. Williamson to another term as Special United States Attorney until September 30, 1989. In *United States v. Plesinski*, 912 F.2d 1033, 1037–38 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991), this court concluded that Deputy Director of the Office of Attorney Personnel Management, Mark Wilkoff, lacked authority to appoint Special Assistant United States Attorneys from February 16, 1988, to January 30, 1989.

---

**6.** Hanoum's conviction is the subject of a separate pending appeal. He is also entitled to

whatever benefit may be obtained from this decision.

Accordingly, Stanley argues that Williamson's appointment was likewise defective and, as a consequence, the indictment should be dismissed.

## B

■ The trial court ruled that Stanley's motion challenging Williamson was untimely. If this were a ruling solely on the basis of violation of Federal Rule of Criminal Procedure 6(d), we would be inclined to agree with the district court's decision. Federal Rule of Criminal Procedure 12(f); WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL SECOND § 193 (2d ed. 1982) (defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than jurisdictional matters must be addressed prior to trial). *See also United States v. Plesinski*, 912 F.2d at 1039 n. 11; *Wall v. United States*, 384 F.2d 758, 763 (10th Cir.1967); *Home News Publishing Co. v. United States*, 329 F.2d 191, 193 (5th Cir.1964); *United States v. Denton*, 307 F.2d 336, 338–39 (6th Cir.), *cert. denied*, 371 U.S. 923, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962). However, Stanley's argument strikes at more than a mere procedural error. Stanley's motion challenges the jurisdiction of the court.

In *Plesinski* we noted:

28 U.S.C. §§ 516 and 547 reserve litigation in which the United States is a party either to officers of the Department of Justice or to U.S. Attorneys. However, while he appeared in court alone on several occasions, [the defectively appointed Special Assistant U.S. Attorney] testified he was not the only government attorney assigned to the case and that he was at all times acting under the direction and supervision of an Assistant U.S. Attorney. Under these circumstances, the court retained its jurisdiction over Plesinski's prosecution despite [the attorney's] unauthorized participation.

*United States v. Plesinski*, 912 F.2d at 1038; *see United States v. Providence Journal Co.*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988); *Homes News Publishing Co. v. United States*, 329 F.2d 191, 193 (5th Cir.1964); *United States v. Denton*, 307 F.2d at 338–39. In every case addressing the authority of a Special Assistant United States Attorney the jurisdiction of the district court was in question. *See Plesinski*, 912 F.2d at 1038; *Wall v. United States*, 384 F.2d at 763 (concluding that there was no jurisdictional problem as the proceedings were initiated by and under the control of a United States Attorney). The lack of jurisdiction of the court shall be noticed by the court at any time during the pendency of the proceedings. *See* FED.R.CRIM.P. 12(b)(2); WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL SECOND § 193, p. 693 (2d ed. 1982).

■ We are unable to determine whether the district court had jurisdiction based on the record before us. As noted above, it must be determined whether or not Williamson operated under the direction and supervision of the United States Attorney's office. In this case the record indicates the action was commenced by David Levi, United States Attorney; Nancy L. Simpson, Assistant United States Attorney; and George Williamson, Special Assistant United States Attorney. However, the record also indicates that George Williamson may have been the only prosecutor in attendance presenting the case against Stanley to the grand jury. While this alone would not be sufficient to upset the conviction, *see United States v. Mechanik*, 475 U.S. 66, 72–73, 106 S.Ct. 938, 942–43, 89 L.Ed.2d 50 (1986), it does call into question whether Williamson was operating under the direction and supervision of the United States Attorney. Accordingly, we conclude the issue is not properly presented for appeal and must remand this case for findings on this limited issue.

## CONCLUSION

Insofar as the judgment of conviction of Stanley rests on resolution of the issues discussed in Part I hereof, it is AFFIRMED. The case is REMANDED to the district court for entry of findings concerning the extent of the direction and supervision over George Williamson by the United

States Attorney's office during the proceedings before the grand jury. The district court may hold such evidentiary hearings as it deems necessary in fulfillment of this mandate. The other issues raised by Durham and Stanley on appeal are reserved pending receipt of the findings of the district court.