UNITED STATES of America, Plaintiff,

v.

Eduardo MENDOZA; Emiliano Tapia Avina; Jose Agustin Castillo; Jose Manuel Cerpas Valencia; Sandra Perez, Richard Galicia; Manuel Belmonte Bucio, Defendants.

No. Cr. S–94–294 WBS.

United States District Court,
E.D. California.

Jan. 2, 1997.

Mary M. French, Federal Defender, Sacramento, CA, for Eduardo Mendoza.

Clifford Earl Tedmon, Law Offices of Clifford Earl Tedmon, Roseville, CA, for Jose Agustin Castillo.

Frank G. Prantil, Law Offices of Frank G. Prantil, Sacramento, CA, for Richard Galicia.

Robert J. Beles, Robert J. Beles Law Offices, Oakland, CA, for Manuel Belmone Bucio.

## MEMORANDUM AND ORDER

SHUBB, District Judge.

Thirteen months after the jury returned guilty verdicts against the defendants (but prior to sentencing), defendants move to dismiss or vacate their convictions. They contend defects in the appointment of the Special Assistant United States Attorney who tried the case deprive the court of jurisdiction and render the convictions a nullity. For the reasons discussed below, the motion is denied.

### I.

### BACKGROUND

On August 19, 1994, defendants were indicted on counts of conspiring to manufacture with intent to distribute methamphetamine, distribution of methamphetamine, manufacture of methamphetamine, and possession with intent to distribute methamphetamine. See 18 U.S.C. §§ 841(a)(l) and 846. A duly appointed Assistant United States Attorney presented the case to the grand jury, and the indictment was signed by the Chief Assistant United States Attorney on behalf of the United States Attorney.

Dale E. Kitching is a Deputy District Attorney in Sacramento County, California, who has represented the United States as a Special Assistant United States Attorney in several trials in this court since 1985. Kitching did not participate in the proceedings before the grand jury. Thereafter, however, in September of 1994, he filed a document notifying the court and the parties that this case had been reassigned to him. After the case was reassigned to him, he appeared in the caption of the government's pleadings

under the names of the United States Attorney and Nancy J. Simpson, an Assistant United States Attorney. He argued pretrial motions and presented the government's case at trial. Though Simpson did not, except on rare occasion, appear in court, she actively participated in plea negotiations, advised and counseled Kitching at various times, reviewed jury instructions, and made arrangements for Kitching to use office space in the federal courthouse during the trial. Kitching declares he has always acted under the supervision of the United States Attorney's Office.[1]

At no time before or during trial did any defendant challenge Kitching's authority to appear on behalf of the United States. In late July of 1995, the jury returned guilty verdicts against defendants Jose Castillo, Manuel Bucio, Jose Cerpas Valencia, Ricardo Galicia, Jr., and Eduardo Mendoza. Over the course of the next year, defendant Valencia moved for judgment of acquittal, and defendant Galicia moved for a new trial, but neither motion raised the issue presented here. In September of 1996, on the eve of sentencing, defendant Mendoza brought this motion challenging the validity of Kitching's appointment as a Special Assistant United States Attorney. The remaining defendants joined in the motion.

The motion raises two alleged deficiencies: (1) Kitching's alleged failure to renew his oath of office upon reappointment or after breaks in service; and (2) improper delegation of appointment authority within the Justice Department such that the person who appointed Kitching lacked the delegated authority to do so. For purposes of this analysis, the court assumes the existence of these deficiencies.

Defendants offer no excuse for failing to challenge Kitching's appointment before trial, during trial, or even immediately after the verdict. They were not misled, or otherwise prevented from ascertaining the facts. The cause and effect of their delay are now evident: defendants did not raise the issue sooner because the defects in Kitching's ap-

---

1. The Director of the Executive Office for the United States Attorneys recently ratified nunc pro tunc all official actions taken by Kitching in this case.

pointment apparently caused them no actual prejudice; and the consequence of their delay, if their motion is granted, is that the government will have to repeat a lengthy trial months, if not years, after the first trial concluded.

## II.

## DISCUSSION

### A. The Motion Is Not Jurisdictional.

█ In the typical situation, the court would have no difficulty determining that defendants' motion is untimely. *See* Fed. R.Crim.P. 12(f) (defenses and objections based on defects in the institution of the prosecution or in the indictment *or information* other than jurisdictional matters must be addressed prior to trial). However, defendants' motion is atypical because it purports to challenge the court's jurisdiction, *i.e.*, the court's power to adjudicate the charges against them. On that basis, defendants contend that the motion may be made at any time during the pendency of the proceedings.[2] As discussed below, the motion is not jurisdictional, and even if it is, it is still untimely.

*United States v. Providence Journal Co.*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988) establishes the general principle that the court lacks jurisdiction over an action commenced on behalf of the government by a person not authorized to do so. *Id.* (dismissing the writ of certiorari for lack of jurisdiction where the initial petition for certiorari was filed by a government lawyer acting without the authority to do so); *see also Federal Election Comm'n v. National Rifle Assoc. Political Victory Fund*, 513 U.S. 88, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994).

In *United States v. Durham*, 941 F.2d 886 (9th Cir.1991), the Ninth Circuit adopted a similar principle for defects in the appointment of a Special Assistant United States Attorney. *Id.* at 891–92. There the defendant challenged the Special Assistant's participation both before the grand jury and subsequently at trial. *Id.* at 891 ("Stanley argues that George Williamson ... was not properly authorized to present the government's case either at the grand jury or at trial"). However, *Durham's* actual holding is comparatively narrow and tracks *Providence Journal Co.*: an unauthorized Special Assistant's presence before a grand jury implicates the district court's jurisdiction if the Special Assistant acted without adequate supervision of the United States Attorney's Office. *Durham*, 941 F.2d at 891–92 (remanding for the narrow purpose of determining the nature and extent of the Special Assistant's supervision before the grand jury).

The facts here do not fit within *Providence Journal Co.* or *Durham*. Although *Durham* does not articulate the rationale for its holding that a Special Assistant's unauthorized participation before a grand jury implicates the court's jurisdiction—except to indicate that every other court has treated the issue as jurisdictional—one can easily be discerned. The courts need some assurance that the virtually unlimited and unreviewable discretion of a federal prosecutor in deciding whether to seek an indictment, and on what charges, is exercised by an authorized person and not some interloper. *See Providence Journal Co.*, 485 U.S. at 706–07, 108 S.Ct. at 1510–11 (discussing the policies reflected in the provisions that confer upon the Solicitor General the sole discretion whether to petition for certiorari on behalf of the United States before the United States Supreme Court); *United States v. Nance*, 962 F.2d 860, 864–65 (9th Cir.1992) (discussing the discretion of a United States Attorney to seek an indictment and on what charges). Here, however, a duly authorized government attorney presented the case to the

---

2. By characterizing the challenge as jurisdictional, defendants arguably avoid a harmless-error analysis. *But cf. United States v. Lennick*, 18 F.3d 814, 817 & n. 2 (9th Cir.) (rejecting a jurisdictional challenge based on an invalid indictment under a harmless-error analysis), *cert. denied*, 513 U.S. 856, 115 S.Ct. 162, 130 L.Ed.2d 100 (1994). However, to the extent defendants must satisfy a harmless-error analysis to succeed on this motion, they have not done so. Defendants have not demonstrated and cannot demonstrate any prejudice as a result of Kitching's representation of the United States. *See United States v. Davis*, 932 F.2d 752, 756 (9th Cir.1991) (concluding defendants suffered no prejudice as a result of an allegedly defective appointment).

grand jury without Mr. Kitching's involvement, and the Chief Assistant United States Attorney signed the indictment. *Providence Journal Co.* and *Durham* are therefore inapplicable.

Similarly, *United States v. Plesinski,* 912 F.2d 1033 (9th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991) provides only limited guidance. There too an unauthorized Special Assistant appeared before the grand jury and participated at trial. The *Plesinski* court appears to have assumed without analysis that the Special Assistant's unauthorized participation at trial raised a jurisdictional issue. That assumption was not essential to *Plesinski's* holding because the Plesinski court concluded that the Special Assistant at all times acted under "under the direction and supervision of an Assistant United States Attorney" and thus no jurisdictional problem arose. *Id.* at 1038.

*Plesinski's* apparent assumption that a Special Assistant's unauthorized appearance at trial raises jurisdictional defects does not constitute binding precedent to that effect. *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 73 S.Ct. 67, 97 L.Ed. 54 (1952) (a case is not binding precedent on a jurisdictional point when it sub silencio assumes the issue). Moreover, *Plesinski* is distinguishable because like *Durham* it involved an instance where the Special Assistant was not only involved at trial, but also involved at the indictment stage of the action.

Neither the parties' briefs nor the court's own research discloses binding precedent addressing the precise issue here: If the court had jurisdiction at the outset of the case, does it lose jurisdiction because a Special Assistant with a defective appointment appears post-indictment and conducts the government's case? The court concludes that it does not lose jurisdiction.

The judicial power to adjudicate a federal controversy derives from Article III of the Constitution and from federal statutes enacted thereunder. *Karcher v. May,* 484 U.S. 72, 77, 108 S.Ct. 388, 391–93, 98 L.Ed.2d 327 (1987). Article III extends the judicial power over all actions arising under the Constitution and laws of the United States. U.S.

Const. art. III, § 2. Congress in turn has conferred on the district courts original jurisdiction over "all offenses against the laws of the United States." 18 U.S.C. § 3231. Offenses against the laws of the United States are those made so by acts of Congress, and district courts have jurisdiction of such offenses upon the filing of an indictment or information charging a defendant with such a crime. *See, e.g., United States v. Perea,* 413 F.2d 65 (10th Cir.1969), *cert. denied,* 397 U.S. 945, 90 S.Ct. 960, 25 L.Ed.2d 125 (1970); *see also* Fed.R.Crim.P. 12(b)(2) (confining jurisdictional challenges to those shown in the indictment).

Section 3231, and the cases construing it, require nothing more than a properly obtained indictment charging a federal crime in order to confer jurisdiction upon the court. To insist, as defendants do, that the court must also have at all times a duly appointed prosecutor appearing on behalf of the government, adds a judicial gloss that goes beyond the plain language of the statute.

When for policy reasons Congress desires to make the district court's exercise of jurisdiction dependent upon the validity of the government attorney's authority to maintain the action, it knows how to do so. Congress explicitly did so in Section 3231's civil counterpart, 28 U.S.C. § 1345. That statute provides that "district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, **or by any agency or officer thereof expressly authorized to sue by Act of Congress.**" *Id.* (emphasis added).

This is not to say that the inclusion of such language in Section 1343 necessarily negates its implication in Section 3231. *Cf. Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991) (reasoning by negative implication applies when construing two provisions within the same act). It does demonstrate, however, that Congress is perfectly capable of reflecting through statutory language the policy choice to link this court's continued jurisdiction to the prosecutor's authority to appear on behalf of the government. It would be inappropriate for this court in the guise of

judicial construction to attempt to do implicitly what Congress has declined to do explicitly in the applicable statute.

Here, the court has before it a proper indictment charging what are undisputably federal offenses, and Kitching's post-indictment participation does not alter these essential jurisdictional facts. While defects, if any, in Kitching's appointment may raise serious concerns, they are not concerns which deprive the court of jurisdiction over the charges against the defendants. *See United States v. Davis*, 932 F.2d 752, 763 (9th Cir. 1991) (indicating that an alleged defect in the appointment of a Special Assistant "was at most a procedural irregularity, which did not deprive the district court of jurisdiction").

Because the perceived defects in Kitching's appointment are not jurisdictional, defendants were required to challenge his authority within the time limits set forth in Fed. R.Crim.P. 12. Since they did not do so, their present motion is untimely. Fed.R.Crim.P. 12(f).

B. *The Motion Is Untimely In Any Event.*

■ Even if defendants' motion did raise a jurisdictional challenge, it is still untimely. The motion is captioned, "Motion to Dismiss or Vacate Conviction." The court has found no authority for such a motion, much less one filed thirteen months after the jury's verdict.

This motion does not fit into any potentially applicable rule. It cannot be construed as a Rule 12(b)(2) challenge. Among other things, Rule 12(b)(2) refers to jurisdictional defects shown in the indictment or information:

Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings)[.]

Fed.R.Crim.P. 12(b)(2). Because defendants do not seek to dismiss the indictment, or claim a jurisdictional defect in the indictment, Rule 12(b)(2) by its terms does not apply. *See United States v. Kahlon*, 38 F.3d

467, 469 (9th Cir.1994) (identifying the jurisdictional claims permitted under Rule 12(b)).

Rule 34 comes closer to authorizing motions like the one here, but, among other things, it imposes a time-limit that defendants have not met. Under Rule 34:

The court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense or if the court was without jurisdiction of the offense charged. The motion in arrest of judgment shall be made within 7 days after verdict or finding of guilty, or after plea of guilt or nolo contendre, or within such further time as the court may fix during the 7–day period.

Fed.R.Crim.P. 34. The 7–day period specified in Rule 34 is jurisdictional. 3 Charles Alan Wright, *Federal Practice and Procedure*, § 573 at 376 (1982) ("The time limitations of the rule are said to be jurisdictional, and it is held that a motion in arrest of judgment made after the time has run comes too late"). And, unlike Rule 12(b)(2), Rule 34 prohibits a court from noticing a jurisdictional problem on its own initiative. *Id.* at 375.

The time limitation for filing a post-verdict jurisdictional motion under Rule 34 is based on common sense. The societal costs of dismissing or vacating a conviction after trial are significantly greater than those of dismissing an indictment before trial. *Cf. United States v. Mechanik*, 475 U.S. 66, 73, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986) ("the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings"). It is one thing for defendants to raise a challenge to the prosecutor's appointment before or even during trial; it is quite another to wait until thirteen months after trial. *Cf. United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) ("[W]e hold that the defect in the examiner's appointment was an irregularity which would invalidate a resulting order if the Commission had overruled an appropriate objection made during the hearings. But it is not one which deprives the Commission of power or jurisdiction, so that even in the

absence of timely objection its order should be set aside as a nullity.")

Defendants' motion does not satisfy the time requirements of Rule 34. It therefore may not be considered. *See Baker v. United States,* 429 F.2d 1278 (9th Cir.) (trial court properly refused to consider jurisdictional Rule 34 motion filed two years after trial), *cert. denied,* 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970).[3]

Concededly, broad language in *Durham* could be construed to authorize even a motion filed thirteen months after the verdict, notwithstanding Rule 34's time limits. The *Durham* court stated: "The lack of jurisdiction shall be noticed by the court any time during the pendency of proceedings." *Durham,* 941 F.2d at 892 (citing inter alia Fed. R.Crim.P. 12(b)(2)). Despite such broad language, the *Durham* decision cannot be understood to sanction motions to dismiss convictions filed thirteen months after the jury's verdict. First, such a reading is unnecessary to *Durham's* holding because the court in *Durham* confined its analysis to the Special Assistant's activities before the grand jury, and the underlying motion in that case only sought to dismiss the indictment. *Id.* at 891. Second, on these facts, such a reading of *Durham* would sub silencio eviscerate Rule 34's time limitations and thereby prejudice the government. The pertinent rules of construction do not permit such a result. *See* Fed.R.Crim.P. 2 ("These rules are intended to provide for the just determination of every proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay").

C. *Supervision and Control.*

 Finally, even if defendants had raised the issue in a timely manner, and even assuming a bona fide jurisdictional challenge, the motion would still fail. Kitching did not participate at the indictment stage, he was supervised by an Assistant United States Attorney, and an Assistant United States Attorney participated directly at important pretrial and trial events such as plea negotiations, and the drafting of jury instructions. These facts alone satisfy the court that Kitching acted under the authority of the United States Attorney. *See Davis,* 932 F.2d at 763; *Plesinski,* 912 F.2d at 1039.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss or vacate the conviction be, and the same hereby is, DENIED.

---

3. Some courts have construed untimely Rule 34 motions as Section 2255 motions or have allowed them by virtue of Rule 12(b)(2). *See Lott v. United States,* 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961) (identifying the practice, but declining to decide its propriety). The court declines to do so on these facts for the reasons discussed, and notes that doing so here would not alter the remainder of the court's analysis or the result.