FILED
United States Court of Appeals
Tenth Circuit

December 19, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSEPH L. SHURTZ,

Defendant-Appellant.

No. 07-3072

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 06-CR-20043-3-JWL)**

---

Submitted on the briefs:[*]

James T. George, Lawrence, Kansas, for Defendant-Appellant.

Eric F. Melgren, United States Attorney, and Terra D. Morehead, Assistant
United States Attorney, Kansas City, Kansas, for Plaintiff-Appellee.

---

Before **BRISCOE**, **EBEL**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  See Fed. R. App. P. 34(f).  The case is therefore submitted without
oral argument.

Defendant Joseph L. Shurtz appeals his conviction for conspiracy to distribute methamphetamine, two counts of distribution of methamphetamine, possession with intent to distribute methamphetamine, and possession of a firearm in furtherance of a drug trafficking crime. Mr. Shurtz argues that he is entitled to acquittal on all counts because the government failed to prove that the methamphetamine in question was a controlled substance under 21 C.F.R. § 1308.12. Because we conclude that 21 C.F.R §1308.12(d) establishes that methamphetamine is a controlled substance and imposes no requirement on the government to prove that the quantity involved would have a stimulant effect on the central nervous system, we affirm the district court decision.

## I. BACKGROUND

Mr. Shurtz was convicted on December 1, 2006 and was later sentenced to 196 months of imprisonment. He was arrested as a result of three controlled drug purchases involving a confidential informant. Following the third controlled buy, Mr. Shurtz and his passenger, James Watterson, were stopped by police. Mr. Watterson ran from the vehicle with a cooler containing pills, two firearms, and drug paraphernalia. At trial, Mr. Watterson testified that when he told Mr. Shurtz that he was going to run if they were pulled over, Mr. Shurtz handed him the cooler and told him to take it with him. Two chemists testified at trial that the pills in the cooler were methamphetamine.

Mr. Shurtz appeals his convictions and argues that he is entitled to acquittal on all counts because the government failed to prove that the quantity of methamphetamine involved in this matter would have a stimulant effect on the central nervous system. Mr. Shurtz asserts that the substances listed under 21 C.F.R. § 1308.12(d) are not controlled substances unless they are possessed or distributed in sufficient quantity to have a stimulant effect on the central nervous system. The Tenth Circuit has never explicitly addressed this issue; however, four other circuits have held that language similar to that used in 21 C.F.R. § 1308.12(d) did not require the prosecution to prove that the substances involved were present in quantities sufficient to cause an effect on the central nervous system.

## II. DISCUSSION

The Controlled Substances Act, 21 U.S.C. § 812, divides controlled substances into five schedules based on factors such as the degree of abuse potential, the existence of accepted medical uses, and the likelihood that abuse may lead to dependance. 21 U.S.C. § 812. Congress created the initial schedules and authorized the Attorney General to update them by adding or removing substances from the lists and by moving substances from one schedule to another. 21 U.S.C. § 811. Schedule II, as adjusted by the Attorney General, appears in 21 C.F.R. §1308.12. It includes methamphetamine.

The Defendant-Appellant argues that 21 C.F.R. § 1308.12 requires the government in every case to prove to the jury that the methamphetamine possessed or distributed by the defendant would have a stimulant effect on the central nervous system. Because the jury was not instructed to decide whether the quantity of methamphetamine involved in this case would have such an effect, he argues that he was entitled to a judgment of acquittal. In support of this contention, he relies on the text of 21 C.F.R. § 1308.12, a decision of the Superior Court of Pennsylvania interpreting a similar state statute, and the regulatory history. We find Mr. Shurtz's arguments unpersuasive and affirm the judgment of the district court.

**A.**

Mr. Shurtz asserts that on its face the text of the regulation establishes that the prosecution must prove that the stimulant in question was possessed or distributed in sufficient quantity to have a stimulant effect on the central nervous system. 21 C.F.R. § 1308.12(d) lists methamphetamine as follows:

.   .   .

(d) Stimulants. Unless specifically excepted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following substances having a stimulant effect on the central nervous system:

(2)    Methamphetamine, its salts, isomers, and salts
of its isomers ....

-4-

The list of controlled substances in 21 C.F.R. § 1308.12(d) comprises, in addition to methamphetamine: amphetamine, phenmetrazine, methylphenidate, and lisdexamfetamine, together with their salts, isomers, and salts of their isomers.

The question is whether the phrase "having a stimulant effect on the central nervous system," is descriptive or limiting. Mr. Shurtz points out that certain other substances listed in 21 C.F.R. § 1308, such as opiates, cocoa leaves, and poppy straw, lack such descriptive or limiting phrases. He suggests that in order to give legal effect to all the words of the regulation, *See Stickley v. State Farm Mut. Auto. Ins. Co.*,___ F.3d. ___, No. 05-1553, 2007 WL 2938380, at *5 (10th Cir. 2007) (holding that a statute should, where possible, be construed according to its plain meaning and, as a whole, giving meaning to all its parts), we must interpret the phrase "having a stimulant effect on the central nervous system" as limiting the provision to cases where methamphetamine appears in a quantity or concentration proven to have the prohibited effect.

We disagree. 21 C.F.R. § 1308.12 is a list of those drugs that Congress and the Attorney General have determined to be controlled substances and "where Congress intended the quantity of a substance to be dispositive, it indicated so unequivocally." *United States v. Picklesimer*, 585 F.2d 1199, 1203 (3rd Cir. 1978). It would violate both congressional intent and long-standing practice for us to infer quantity limitations where no such limitations are affirmatively stated.

This straightforward interpretation of the provision makes sense of the language. Although the linguistic conventions of the regulation are not entirely consistent, it appears that phrases based on the effect of the substance are included in the legal description when the category is denominated by a term based on its effect on users—for example, "stimulant" or "depressant"—and not when the category is denominated by a term based on the chemical or biological composition of the substance—for example, "opiate" or "cocoa leaves." There is no reason to read into that linguistic convention a legal requirement for additional proof of quantity or effect in a particular case. Rather, the descriptive phrase serves the purpose of aiding the Attorney General in classifying emerging drugs. Because stimulants and depressants may appear in new chemical forms, language based on stimulant or depressant effect enables the Attorney General to include those new drugs within the appropriate schedule based on general pharmacological evidence regarding those effects.

Every Court of Appeals to confront this question has reached the same conclusion. *See United States v. Durham*, 941 F.2d 886, 890–91 (9th Cir. 1991) (holding that the language was intended as guidance for the Attorney General); *Picklesimer*, 585 F.2d at 1203 (holding that similar language was merely a description of the listed drugs); *United States v. White*, 560 F.2d 787, 789 (7th Cir. 1977) (holding that C.F.R. § 1308.12(d) is a list of drugs that congress has determined to have a stimulant effect on the central nervous system); *United*

-6-

*States v. Nickles*, 509 F.2d 810 (5th Cir. 1975) (holding that similar language evidences a congressional determination of the actual depressant effect of the listed substances). These decisions date back over thirty years, and Congress has not questioned the interpretation. In light of the unanimity of federal court interpretation, we give little weight to Mr. Shurtz's favored authority, a decision of the Superior Court of Pennsylvania, *Commonwealth v. Teada,* 344 A.2d 682 (Pa. Super. Ct. 1975), which interpreted similar language in a state statute. *See Picklesimer*, 585 F.2d at 1202 (declining to apply the reasoning of *Teada* to 21 C.F.R. § 1308.12(d)).

The Defendant further argues that his interpretation of 21 C.F.R. § 1308.12 is supported by the prior placement of methamphetamine in Schedule III of 21 U.S.C. § 812(c). Schedule III contained the same language as is currently used in 21 C.F.R § 1308.12 with the exception that, rather than simply listing "Methamphetamine, its salts, isomers, and salts of its isomers," as is done under 21 C.F.R § 1308.12(d)(2), Section 812 stated: "Any substance (except an injectable liquid) which *contains any quantity* of methamphetamine, including its salts, isomers, and salts of isomers" (emphasis added). When the Attorney General moved methamphetamine from Schedule III to Schedule II, the language proscribing "any quantity of methamphetamine" was dropped. Mr. Shurtz suggests that when language is deleted from, or added to, an existing statute, courts should construe the statute so that the additions or deletions have meaning.

He contends that if the current version of 21 C.F.R. § 1308.12 were to provide that any quantity of methamphetamine is a controlled substance regardless of the particular quantity's stimulant effect on the central nervous system, the deletion of "any quantity of methamphetamine" would become meaningless.

We decline to adopt the Defendant's explanation for the language differences between 21 C.F.R. § 1308.12 and 21 U.S.C. § 812. The more plausible explanation for the deletion of "any quantity of methamphetamine" is that the language was redundant. In some cases, quantities or concentrations of the relevant substances determine their schedule. For example, depending on their quantities and concentrations, dihydrocodeine and codeine can be Schedule III drugs or Schedule V drugs. 21 C.F.R. § 1308.13; 21 C.F.R. § 1308.15. Indications of quantity or effect are therefore necessary to determine in any particular case which schedule is applicable. The listings in Schedule II, by contrast, do not depend on drug quantity or concentration. It would therefore have been redundant for the Attorney General to import the "contains any quantity" language for methamphetamine when it was shifted to Schedule II.

We therefore conclude, based on the language of the provision and long-standing precedent interpreting it, that the substances enumerated under 21 C.F.R. § 1308.12(d) are prohibited without regard to their quantity or concentration. Accordingly, the government did not need to offer proof at trial that the quantity

of methamphetamine possessed or distributed by the defendant would have a stimulant effect on the central nervous system.

### III. CONCLUSION

The judgment of the United States District Court for the District of Kansas is **AFFIRMED**.