**UNITED STATES of America,**
**Respondent**

v.

**Anthony NAVARRO, Movant.**

**No. CR. S–94–390 LKK.**

United States District Court,
E.D. California.

April 9, 1997.

Nancy Simpson, Assistant United States Attorney, Sacramento, CA, for Respondent.

Brenda Grantland, Mill Valley, CA, for Movant.

## ORDER

LAWRENCE K. KARLTON, Chief Judge Emeritus.

Movant filed the instant suit pursuant to 28 U.S.C. § 2255. He claims that the Special Assistant United States Attorney appearing in the criminal case underlying this litigation was without authority to represent the United States during the relevant period, and accordingly, this court lacked jurisdiction to entertain that prosecution.

The matter was briefed, an evidentiary hearing was held, argument was heard and the matter was taken under submission. It is disposed of herein.

## I.

### FACTS

At all times relevant herein, Dale Kitching was a Deputy District Attorney in the County of Sacramento, and was Supervisor of that office's major narcotics unit. Pursuant to those responsibilities, Mr. Kitching became involved in the Sacramento County Sheriff's investigation of the movant. After Navarro's arrest, Mr. Kitching telephoned Nancy Simpson, then Chief of the Narcotics and Violent Crime Section of the office of the United States Attorney for the Eastern District of California. His purpose was to propose the federal prosecution of the movant.

Ms. Simpson agreed that the case fell within the standards adopted by this district's United States Attorney for the prosecution of narcotics cases. Upon Ms. Simpson's agreement, Mr. Kitching, in his capacity as a Special Assistant United States Attorney ("SAUSA"), prepared a complaint which was forwarded to and filed by the office of United States Attorney in this court on October 31, 1994. The complaint showed as the prosecuting attorneys, Ms. Simpson and Mr. Kitching.[1]

Thereafter, on November 10, 1994, Mr. Kitching appeared alone before the grand jury and obtained an indictment of Mr. Navarro. In due course, negotiations between Mr. Kitching and Navarro's various attorneys resulted in a plea agreement being struck on March 7, 1995, the first day of trial. The defendant was sentenced on July 12, 1995.

Although Mr. Kitching consulted with Ms. Simpson before disposition of the case, quite understandably because of his long experience as both a county prosecutor of narcotics cases and as an SAUSA, he essentially acted without supervision or direction from the United States Attorney or members of his staff. Despite this absence of supervision, the court finds that in terms of Mr. Kitching's conduct of the case, nothing untoward occurred. Accordingly, movant has not, and could not, show prejudice by virtue of the fact that he was prosecuted by Mr. Kitching. As I explain below, however, if the court actually lacks jurisdiction, movant need not show prejudice. For that reason, I now outline the facts pertaining to the prosecutor's appointment.

## II.

### MR. KITCHING'S APPOINTMENT

Mr. Kitching's appointment history as a SAUSA is somewhat tortured, and the appointing papers are less than perfectly clear. It appears, however, that his original appointment was on June 17, 1985, to remain effective to November 30, 1985. Thereafter, his appointment was extended to November 11, 1986 and then again to November 30, 1987. It appears this appointment expired on that date. On December 12, 1987, Mr. Kitching was reappointed as a Special Assistant, his term to last through November 30, 1988. It appears that the appointment expired on that date.

It next appears that Mr. Kitching was reappointed effective May 5, 1989 through November 30, 1990. That appointment was renewed on October 25, 1990 effective through November 30, 1991. Once again the appointment expired.

---

1. Cooperation between federal and local law enforcement is, of course, desirable. Nonetheless, as the Supreme Court recently noted, "[u]nder our federal system, the States possess primary authority for defining and enforcing the criminal law." *United States v. Lopez,* 514 U.S. 549, 561 n. 3, 115 S.Ct. 1624, 1631 n. 3, 131 L.Ed.2d 626, 638 n. 3 (1995) (citations and internal quotations omitted). The draconian penalties imposed under the federal sentencing guidelines, however, provide a great incentive for cases such as this where criminal activity, uncovered by local law enforcement in the course of their investigation of state crimes, is transmuted into a violation of federal law by virtue of the happenstance that a local deputy district attorney has been cross-designated as a Special Assistant United States Attorney. Whether this procedure is consonant with the notions of "our federalism," assiduously developed in a different context in recent years by the United States Supreme Court, appears to this trial judge to be at least open to question.

On March 17, 1992, Mr. Kitching was again reappointed effective through March 31, 1993. That term expired.

Mr. Kitching was again reappointed on September 1, 1994 effective through August 31, 1995. This appointment was extended August 15, 1995, through August 31, 1996. His appointment then expired on that date and he was reappointed September 4, 1996 through August 31, 1997.

Throughout the period of appointment, extension, expiration and reappointment, Mr. Kitching took only two oaths of office. He first took an oath as a Special Assistant on July 16, 1985, and the second time was on September 6, 1996.

### III.

### ANALYSIS

As noted above, the pertinent dates relative to movant's prosecution and plea are between October 31, 1994, the date the complaint was filed, and July 12, 1995, the date of sentencing. By a fluke, the pertinent dates eliminate one basis for attacking Mr. Kitching's authority to act for the United States. Since it appears that Mr. Kitching had been reappointed in September of 1994 effective through August 31, 1995, at least he was not acting while his appointment had lapsed.[2] That issue being foreclosed, the movant attacks Mr. Kitching's status as a Special Assistant on the basis that under the law he may not be reappointed more than two times, (i.e., there is a four year limit), that the apparent appointing authority was without authority to make the appointment, and that Mr. Kitching had not taken the oath of office subsequent to the pertinent appointment despite the fact that the appointing document and the applicable federal statute required him to do so.

To say the least, the question of the effect of various defects in the appointing process of Special Assistant United States Attorneys is less than pellucid. The Supreme Court has spoken of unauthorized litigation as going to the court's jurisdiction. The Ninth Circuit, however, has generally treated flaws in the appointment of special prosecutors as a question of procedural defects. Below, the court briefly examines the origin and development of the doctrine, and thereafter addresses the matter at bar.

### A. PROVIDENCE JOURNAL AND ITS PROGENY

The seminal case giving rise to the doctrine which informs the issues tendered herein is *United States v. Providence Journal Company*, 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988). There, the Supreme Court held that where an attorney purportedly representing the United States is without authority to do so, "we must dismiss the heretofore granted writ of certiorari for want of jurisdiction." *Id.* at 699, 108 S.Ct. at 1506.

The issue of the effect of unauthorized representation arose because, generally speaking, under 28 U.S.C. § 1254(1) only the Solicitor General may authorize the filing of a petition for certiorari in the Supreme Court on behalf of the United States.[3] In *Providence Journal*, however, the Court had granted certiorari upon the petition of a special prosecutor which had been filed without permission of the Solicitor General. The Court concluded that the petition for certiorari was tendered and prosecuted by a attorney who, under the statute, had no authority to represent the United States, and held that under such circumstances it was without jurisdiction to entertain the litigation.

As with proceedings before the Supreme Court, the Congress has also limited those who may appear on behalf of the United

---

**2.** The court's comment is prompted by a fact which emerged relatively clearly from the evidentiary hearing, no one was minding the store. Indeed, it appears that no one in the United States Attorney's office had the responsibility of insuring that Special Assistants actually had the current authority to represent the United States. Moreover, from all that appears, the court infers that no one at the Department of Justice had such responsibility either. This is hardly a mat-

ter of small concern, given the awesome authority and discretion reposed in United States Attorneys and, by extension, their Assistants.

**3.** The statute provides that the Solicitor "shall conduct and argue suits and appeals in the Supreme Court ... in which the United States is interested." 28 U.S.C. § 518(a).

States in subordinate courts. It has provided that such appearance is limited to officials of the Department of Justice, *see* 28 U.S.C. § 516,[4] and the authority to prosecute federal crimes is further limited to the United States Attorney for the district. *See* 28 U.S.C. § 547(1).[5] The Congress has, however, provided for the appointment of assistants to aid the United States Attorney in the discharge of his duties. *See* 28 U.S.C. § 543(a).[6]

Because only the United States Attorney, whether personally or through his assistants, may appear in a criminal case, it would seem to follow that a criminal case prosecuted by an unauthorized attorney is noncognizable. For that reason, the district court, although having subject matter jurisdiction "of all offenses against the laws of the United States," *see* 18 U.S.C. § 3231, is, under *Providence Journal*, without jurisdiction over such a case. *See United States v. Durham*, 941 F.2d 886 (9th Cir.1991).[7]

■ Since "[j]udicial jurisdiction implies the power to hear and determine a cause ..." *United States v. O'Grady*, 89 U.S. 641, 647, 22 Wall 641, 22 L.Ed. 772 (1875), in the absence of jurisdiction a court may neither hear nor dispose of a case. Because jurisdiction goes to the power of the court to act, jurisdictional defects cannot be waived, *see, e.g., American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951) (superseded by statute on other grounds), and, for the same reason, are not subject to harmless error analysis. *Gomez v. United States*, 490 U.S. 858, 876, 109 S.Ct. 2237, 2248, 104 L.Ed.2d 923 (1989) (magistrate lacks jurisdiction to voir dire felony jury and conviction must be reversed without regard to whether error harmless);

*see also Farley Transp. Co., Inc. v. Santa Fe Trail Transportation Co.*, 778 F.2d 1365, 1368 (9th Cir.1985) (failure to properly appeal is jurisdictional and not subject to harmless error analysis).

Nonetheless, it does not follow that every defect in the appointment of a special prosecutor makes his appointment void. Rather, the Ninth Circuit has treated a variety of defects in the appointment of Special Assistants as waivable or curable procedural defects and thus not going to the jurisdiction of the court. *See United States v. Plesinski*, 912 F.2d 1033, 1039 (9th Cir.1990) (failure to readminister oath after reappointment and unauthorized presence in grand jury procedural), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991); *United States v. Durham*, 941 F.2d at 892 (SAUSA appointed by person outside the chain of those authorized to appoint not fatal if he was under direction and supervision of United States Attorney); *United States v. Davis*, 932 F.2d 752, 763 (4th Cir.1991) (absence of written delegation of authority to appoint SAUSA cured by nunc pro tunc validation since only a "procedural irregularity"), *reh'g denied* (1991); *see also United States v. Mendoza*, *supra*, 957 F.Supp. at —— (failure to timely object to defects in appointment of trial prosecutor is a waiver of procedural irregularity).

■ In sum, the court understands the cases to hold that on the one hand, where an attorney, acting essentially without supervision who is not authorized to represent the United States presents the case to the grand jury, or perhaps otherwise conducts all of the proceedings, a jurisdictional defect is tendered and the proceedings are a nullity. On the other hand, where there is merely some

---

4. The statute provides:

 "Except as otherwise authorized by law, the conduct of litigation in which the United States ... is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General."
 28 U.S.C. § 516

5. The statute provides:

 "Except as otherwise provided by law, each United States Attorney, within his district, shall ... (1) prosecute for all offenses against the United States."

28 U.S.C. § 547(1).

6. The statute provides:
 "The Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires."
 28 U.S.C. § 543(a).

7. Even if this court were to follow Judge Shubbs' recent decision distinguishing between unauthorized appearances before the Grand Jury and unauthorized trial of the matter, *see United States v. Mendoza*, 957 F.Supp. 1155 (E.D.Cal.1997), this conclusion applies, since Mr. Kitching appeared alone before the Grand Jury.

defect in the appointment process, it is a procedural defect which may be cured by subsequent validation, is waived if not timely raised, and such a claim is subject to harmless error analysis.

## B. APPLICATION OF THE DOCTRINE

 Two of movant's claims are readily disposed of under the above analysis. While it appears to be true that the appointment of Mr. Kitching that is relevant to these proceedings was made by someone outside the chain of proper authority, it is also true that a *nunc pro tunc* validation by a Justice Department official with authority has also been issued. That suffices to cure the defect in the absence of prejudice. *See United States v. Davis, supra.* In like manner, Mr. Kitching's failure to take the oath upon the occasion of his relevant reappointment is cured by the fact that he took the oath originally and again upon learning of the necessity of doing so. *See United States v. Plesinski, supra.*

 The sole question remaining is whether a SAUSA may be appointed for a period exceeding four years. This issue appears to be one of first impression. The further question of whether prosecution by a SAUSA so appointed raises a jurisdictional or procedural defect also apparently has not been resolved heretofore. The court now turn to those questions.

Ordinarily, federal duties must be discharged by those that Congress has authorized to be employed. The Congress has provided, however, that under specified circumstances the head of a federal agency may arrange for the assignment of an employee of a local governmental unit to his agency for a period not to exceed four years for work of mutual concern to that agency and the local government. *See* 5 U.S.C. § 3372(a).[8]

A local government employee utilized under this arrangement may either be appointed in the Agency or deemed on detail. 5 U.S.C. § 3374(a). The distinction is that those who are appointed are entitled to compensation from the federal agency, 5 U.S.C. § 3374(b), while those on detail, like Mr. Kitching, remain on the payroll of the supplying governmental unit. 5 U.S.C. § 3374(c).

Relying on the provision of § 3372(a) which prohibits extension of an assignment beyond a period of four years, the movant claims that all renewals and reappointments subsequent to November 30, 1988 are ineffective as violative of the statute. Since Mr. Kitching's conduct of the case occurred subsequent to that date, movant concludes that a person purporting to represent the United States but unauthorized to do so sought and obtained the indictment from the Grand Jury, negotiated the disposition, and appeared at the taking of the plea and the sentencing. Movant thus maintains that the court was without jurisdiction under *Providence Journal* and that he is entitled to a vacation of the sentence, the judgment of guilt, and indeed dismissal of the underlying criminal indictment.

 The government tenders a number of responses. First, it argues that by virtue of the plea of guilty, the defendant has waived any claim relating to the legality of the prosecutor's appointment. Second, the government maintains that in the absence of demonstrated prejudice, defendant is not entitled to relief. Narrowing its defense from general principles to the specific claim of a violation of 5 U.S.C. § 3372, the government argues that SAUSAs are not appointed pursuant to Title 5, but pursuant to 28 U.S.C. § 543 which they note was enacted prior to 5 U.S.C. § 3372. Before turning to the questions of waiver or the need for a showing of prejudice, the court examines whether the statute applies at all.

---

**8.** The statute provides:

"(a) On request from or with the concurrence of a ... local government, and with the consent of the employee concerned, the head of a Federal agency may arrange for the assignment of ...

(2) an employee of a ... local government to his agency; for work of mutual concern....

The period of assignment under this subchapter may not exceed two years. However, the head of the federal agency may extend the period of assignment for not more than two additional years...."
5 U.S.C. § 3372(a)(2).

Relying upon what is apparently a letter opinion from the Department of Justice's Office of Legal Counsel, the government argues that there is a distinction between "voluntary" and "gratuitous," and that Mr. Kitching's services are gratuitous rather than voluntary, and thus not covered by 5 U.S.C. 3372.[9]

I do not pause to explore the government's strained reading. Whatever the meaning of voluntary, that meaning does not address the limitations found in 5 U.S.C. § 3372(a), which, by its plain terms, governs, *inter alia*, appointments such as those of local deputy district attorneys to the position of Special Assistant United States Attorney. It is, of course, true that the plain meaning of a statute is derived from reading it in context; nonetheless, even if the Intergovernmental Personnel Act prohibits only "voluntary" and not "gratuitous" service, that fact is irrelevant to the time limitation on the appointment of any local employee to a position within the federal government. In like fashion, the fact that a SAUSA must be appointed pursuant to the Attorney General's authority under 28 U.S.C. § 543 in no way suggests a limitation on the effect of 5 U.S.C. § 3372(a). No basis for exemption from the clear provisions of § 3372 appears, and the court can discern no reason that the latter statute does not apply.

■ Although the government may be suggesting that 28 U.S.C. § 543 and 5 U.S.C. § 3372(a) are somehow in conflict, no apparent conflict exists. The standard rule of construction is that where two statutes "[a]re capable of coexistence, it is the duty of the court, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1018, 104 S.Ct. 2862, 2881, 81 L.Ed.2d 815 (1984) (quoting *Regional Rail*

*Reorganization Act Cases*, 419 U.S. 102, 133–34, 95 S.Ct. 335, 353–54, 42 L.Ed.2d 320 (1974)). That rule is easily applied in the instant case, resulting in a construction that, although the Attorney General appoints SAUSAs, such appointments are limited by the provisions of § 3372(a). *Id.*

■ Nor does the fact, argued by the government that 28 U.S.C. § 543 is the earlier statute alter the result. As the movant fairly notes, if indeed the two statutes were irreconcilable, the more recent statute would govern. *See, e.g., Detweiler v. Pena*, 38 F.3d 591, 594 (D.C.Cir.1994).

The inevitable result of a plain reading of the statutes are that while the Attorney General may appoint a SAUSA, such appointment is subject to the limitations imposed by 5 U.S.C. § 3372. Thus, Mr. Kitching could not serve beyond a period of four years.

Having concluded that at the relevant time Mr. Kitching's appointment violated a governing federal statute, I must consider whether the violation is procedural or jurisdictional. As noted above, a jurisdictional defect deprives the court of the power to hear and dispose of the matter, while a procedural defect is subject to cure, may be waived and requires prejudice for relief.

A close reading of the cases suggests that when there is a clerical error in the appointment process, or an error exists which is capable of cure, the error is properly characterized as procedural. *See, e.g., United States v. Plesinski, supra; United States v. Davis, supra.* On the other hand, when a statute prohibits an attorney purportedly representing the United States from doing so the defect cannot be cured and is jurisdictional. *Providence Journal, supra.*[10]

---

9. The argument, such as it is, derives from the fact that Title 5 generally prohibits the government's acceptance of voluntary services. *See* 31 U.S.C. § 1342, and *see Lee v. The United States*, 45 Ct.Cl. 57, 1909 WL 876 (1910), which holds that a special assistant employed by the Attorney General who remained on after expiration of his appointment could not be paid because the claimant, not having been properly appointed, was acting voluntarily in violation of the statute.

10. *United States v. Durham* is difficult to fit into the pattern. Although it addresses the issue of a defectively appointed SAUSA's appearance before the grand jury as a jurisdictional defect, it remands to the district court for further factual development. 941 F.2d at 892–93.

Given all the above, it appears to the court that Mr. Kitching's continued appointment after four years was prohibited by the statute and thus he could not appear as a SAUSA before the grand jury or the district court in the underlying case. Moreover, given the statutory prohibition, the defect was not curable or subject to lawful validation. Put directly, the defect was not procedural but jurisdictional. Accordingly, movant's § 2255 motion must be granted.[11]

### IV.

### ORDER

For all the above reasons, movant's motion to vacate, set aside or correct his sentence is GRANTED and the underlying indictment is DISMISSED.

IT IS SO ORDERED.

---

11. This conclusion has given the court significant pause. If the court's holding is correct, Mr. Kitching has been acting as an unauthorized SAUSA for some six years and perhaps dozens of cases are imperiled by this ruling. Such a consequence is hardly to be viewed with equanimity. *See United States v. Mechanik,* 475 U.S. 66, 72, 106 S.Ct. 938, 942, 89 L.Ed.2d 50 (1986) ("the reversal of a conviction entails substantial social costs"); *see also Morris v. Slappy,* 461 U.S. 1, 14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983) ("passage of time ... may render retrial difficult, even impossible."). Nonetheless, result oriented decision making must be eschewed if the rule of law is to prevail.

The court is somewhat comforted by the notion that other potential movants will be dissuaded from proceeding by the fact the Navarro's victory here appears short lived indeed. Nothing in this opinion will prevent either state or federal authorities from promptly rearresting movant and subjecting him to trial. Given the apparent strength of the government's case, conviction looms and, if convicted in federal court, it appears unlikely that Navarro will again receive an adjustment for early acceptance of responsibility.