**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Anthony NAVARRO, Defendant–Appellee.**

**No. 97–16794.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1998.

Decided Nov. 24, 1998.

Thomas E. Flynn, Assistant United States Attorney, Sacramento, California, for the plaintiff-appellant.

Brenda Grantland, Mill Valley, California, for the defendant-appellee.

Before: ARTHUR L. ALARCON, DIARMUID F. O'SCANNLAIN and FERDINAND F. FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Anthony Navarro pled guilty to possession of cocaine and methamphetamine with intent to distribute, and was sentenced accordingly. *See* 18 U.S.C. § 841. Thereafter, he commenced this action under 28 U.S.C. § 2255 in which he requested that the district court set aside the judgment and dismiss the indictment. He asserted that Dale E. Kitching, the Special Assistant United States Attorney (SAUSA), who handled proceedings against him, could not act in that capacity because he was barred by the Intergovernmental Personnel Act, 5 U.S.C. § 3372 (the IPA). The district court agreed, vacated the judgment, and dismissed the indictment.[1] The government appealed and we reverse.

---

1. *See United States v. Navarro,* 972 F.Supp. 1296 (E.D.Cal.1997) (*Navarro II* ); *United States v. Na-* *varro,* 959 F.Supp. 1273 (E.D.Cal.1997) (*Navarro I* ).

## BACKGROUND

Navarro, admittedly, engaged in the possession of cocaine and methamphetamine in the County of Sacramento, California. During the period relevant to this case, Kitching, a Deputy District Attorney in that county, was involved in the investigation and arrest of Navarro for those offenses. Kitching had worked for many years as a SAUSA; he contacted Nancy L. Simpson, Chief of the Narcotics and Violent Crime Section of the United States Attorney's Office for the Eastern District of California, and suggested federal prosecution of Navarro. Simpson agreed that the case met the standards for narcotics prosecutions used by her office. Acting as a SAUSA, and with Simpson's agreement, Kitching prepared a complaint, which was filed by the United States Attorney's Office. Simpson and Kitching were listed in the complaint as the prosecuting attorneys, but Kitching made the sole appearance before the grand jury at which the indictment was obtained. Kitching then conducted negotiations leading to a guilty plea in exchange for the government's promise not to oppose a two-level reduction in the sentencing guideline range for acceptance of responsibility and to recommend a sentence at the low end of the range. Simpson approved of that plea agreement.

After Navarro pled guilty, was sentenced, appealed, and lost, he commenced this action in which he claimed, among other things, that because Kitching had first become a SAUSA as early as June of 1985, he had clearly exceeded the maximum term of four years provided by the IPA and, therefore, his purported representation of the United States during the course of this prosecution—1994–1995—was incurably void. As a result, Navarro argued, the district court had no jurisdiction over the prosecution. The district court agreed, and granted Navarro relief. Thereafter, it denied the government's motion for reconsideration, and this appeal followed.[2]

2. The district court held against Navarro on other issues. Those were not appealed, and are not

## STANDARDS OF REVIEW

We review the grant of a § 2255 motion de novo. *See Sanchez v. United States,* 50 F.3d 1448, 1451 (9th Cir.1995). However, we review factual findings for clear error. *See United States v. Span,* 75 F.3d 1383, 1386 (9th Cir.1996). We review the district court's interpretation of a statute de novo. *See United States v. Jarvouhey,* 117 F.3d 440, 441 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998).

## DISCUSSION

The government has mounted a number of attacks regarding the propriety of the district court's, and our, hearing Navarro's petition at all. It argues that the issue is not cognizable on a motion under 28 U.S.C. § 2255. But, Navarro asserts, under § 2255, jurisdictional issues can be considered. *See United States v. Addonizio,* 442 U.S. 178, 184–85, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). The government also argues that this challenge cannot be brought because it comes after Navarro's guilty plea and, therefore, comes too late. But, Navarro responds, jurisdictional issues are not necessarily waived by a guilty plea where the defect appears on the face of the proceeding without the need of further evidentiary development of the record. *See United States v. Broce,* 488 U.S. 563, 574–76, 109 S.Ct. 757, 765–66, 102 L.Ed.2d 927 (1989); *United States v. Broncheau,* 597 F.2d 1260, 1262 n. 1 (9th Cir.1979). Then the government hurls an attack on Navarro's revetment on the theory that the issue was not raised at trial or on direct appeal, and Navarro has not shown cause and prejudice. Navarro defends by arguing that a jurisdictional claim is not necessarily barred despite the failure to raise it at trial or on direct appeal. *See Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir.1994); *United States v. Mitchell,* 867 F.2d 1232, 1233 n. 2 (9th Cir.1989). Finally, the government says, if we uphold Navarro's position we will be adopting a new rule which he cannot take advantage of. *See Teague v.*

before us. *See Navarro I,* 959 F.Supp. at 1278.

*Lane,* 489 U.S. 288, 311, 315, 109 S.Ct. 1060, 1075, 1078, 103 L.Ed.2d 334 (1989); *United States v. Judge,* 944 F.2d 523, 524–25 (9th Cir.1991). But *Teague* can be waived, *see Goeke v. Branch,* 514 U.S. 115, 116–18, 115 S.Ct. 1275, 1276, 131 L.Ed.2d 152, 156–57 (1995) (per curiam), and the government at the very least placed its position in serious jeopardy when it did not bother to raise the issue until it propounded its motion for reconsideration to the district court. *See Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 380 (9th Cir.1997); *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985).

We have touched on the parties' arguments rather sententiously because we need not resolve them. As is apparent, they hinge on the question of whether the district court was entirely deprived of jurisdiction by the allegedly insurmountable defect in Kitching's SAUSA appointment wrought by 5 U.S.C. § 3372. In turn, the pin on which the hinge inevitably rotates is the question of whether § 3372 applies to the appointment at all. If it does not, Navarro's argument and all of the jurisdictional and procedural complexities it could present will fall. Therefore, rather than pother over them in the abstract, we will first look to see whether the pin itself has substance. If it does not, our inquiry will be at an end.

 The IPA provides, in pertinent part, that the "head of a federal agency may arrange for the assignment of . . . an employee of a State or local government to his agency. . . ." 5 U.S.C. § 3372(a)(2). It then continues. "The period of an assignment under this subchapter may not exceed two years. However, the head of a Federal agency may extend the period of assignment for not more than two additional years." *Id.* All agree that Kitching's appointments went on for more than four years. Thus, § 3372 would present difficulties, if it were the only possible source of the SAUSA appointment power.

It is not. Congress conferred a separate power of appointment upon the Attorney General many decades ago when it declared that, "[t]he Attorney General may appoint attorneys to assist United States attorneys when the public interest so requires." 28

U.S.C. § 543(a).[3] There are no time restrictions whatever upon that power, and we see no reason to add any.

The district court applied what it took to be the plain meaning of § 3372(a), said that it and § 543 could coexist, and noted that the fact that § 543 was earlier did not necessarily control the analysis. *See Navarro I,* 959 F.Supp. at 1279; *see also Navarro II,* 972 F.Supp. at 1305–06. It concluded that the "inevitable result" was that § 3372(a) controlled. *Navarro I,* 959 F.Supp. at 1279. With all due respect, we approach the matter from a slightly different angle and reach a very different result.

We agree that the two statutes can coexist, but that is because each is a star in the constellation of powers conferred upon the Attorney General, and neither interferes with or eclipses the other. *See Hawthorne,* 449 F.Supp. at 1055–56 (separate code sections constitute independent statutory bases for the appointment of attorneys and narrowing language in one—28 U.S.C. § 515—does not affect the breadth of the other—28 U.S.C. § 543). That is particularly true where, as here, Congress has specifically conferred a power upon the Attorney General. A later statute, which applies to government agencies generally, cannot be said to restrict that more specific grant of power.

It has long been understood that general statutory provisions, like the provisions of § 3372, do not control specific ones, like the provisions of § 543, where some conflict seems to exist between them. As the Supreme Court said not so very long ago, "[i]t is an elementary tenet of statutory construction that '[w]here there is no clear indication otherwise, a specific statute will not be controlled or nullified by a general one. . . .'" *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. 365, 375, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990) (citation omitted). It expressed the same view over a century before that when it pointed out that it was then a "well-settled rule, that general and specific provisions, in apparent contradiction, whether in the same or different statutes, and without regard to priority of

---

**3.** The predecessor of the provision was enacted over a century ago. *See United States v. Haw-*

*thorne,* 449 F.Supp. 1048, 1051 n. 5 (S.D.Cal. 1978), *aff'd,* 626 F.2d 87 (9th Cir.1980).

enactment, may subsist together, the specific qualifying and supplying exceptions to the general." *Townsend v. Little,* 109 U.S. 504, 512, 3 S.Ct. 357, 362, 27 L.Ed. 1012 (1883). In so doing, the Court, as its language suggests, was pointing to a rule of even older provenance, which was well summed up in the following passage quoted by the Ohio Supreme Court:

> "In regard to the mode ·in which laws may be repealed by subsequent legislation, it is laid down as a rule, that a general statute without negative words, will not repeal the particular provisions of a former one, unless the two acts are irreconcilably inconsistent. The reason and philosophy of the rule is ... that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting. the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction in order that its words shall have any meaning at all."

*Ohio ex rel. Fosdick v. The Mayor of Perrysburg,* 14 Ohio St. 472, 485–6, 1863 WL 43, (Ohio 1863) (citation omitted). One may look to even more ancient authorities for that proposition. *See, e.g.,* 1 William Blackstone, Commentaries *p. 89–90; *Gregory's Case,* 6 Coke's Reports 19b (K.B.1596). But we believe we have now receded far enough into the past, and we will return to the statute at hand.

Not only does the deeply rooted principle we have just adumbrated point to the ability of the Attorney General to rely upon § 543 alone, but indicators within § 3372 itself also do the same. First, that statute provides that its limitations only apply to appointments made "under this subchapter." 5 U.S.C. § 3372(a)(2). That suggests the lack of congressional intent to restrict authority

granted elsewhere, and, of course, § 543 is not within the subchapter in question.

Second, Congress was well aware of the fact that it had granted similar kinds of appointment powers in the past, and to the extent that Congress desired to do so, it repealed those particular grants. *See* IPA, Pub.L. No. 91–648, § 403, 84 Stat.1909, 1925 (1971) (repealing provisions relating to programs of the Department of Agriculture, the Office of Education and the Public Health Service). Congress's failure to include the Attorney General's power in that repeal indicates a lack of intention to limit that power. Also, the programs repealed were very much like the program that appears to be envisioned in the IPA. That is a different sort of program from the one contemplated in § 543. The latter is for the purpose of helping the United States, rather than for the purpose of instructing officers of one government in the ways of the other government.

Finally, although we see little need to consult legislative history, nothing in that history suggests an intention to weaken the Attorney General's authority to seek the aid of SAUSAs in an attempt to further protect the people of the United States against what has sometimes seemed to be a tidal wave of crime. Rather, the purpose of the IPA, as indicated in the House Report, was to strengthen and improve the quality of government; it was not to take away strengths that already existed. *See* H. Rep. No. 91–1733 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5879–5902.

Again, we see nothing in the enactment of the exchange program provided for in the IPA which would suggest that Congress intended to limit the Attorney General's long-standing power to appoint SAUSAs for the purpose of helping the Department of Justice protect the public interest of the United States by prosecuting those who offend its laws.[4]

---

4. Navarro's argument that the Department of Justice's Manual for United States Attorneys somehow affects this analysis is otiose. In the first place, the manual does not have the force of law and could not itself affect the power of the Attorney General or the jurisdiction of the courts. *See James v. United States Parole Comm'n,* 159

F.3d 1200 (9th Cir. 1998); *Western Radio Servs. Co., Inc. v. Espy,* 79 F.3d 896, 901 (9th Cir.1996). In the second place, the provisions Navarro points to have very little to do with SAUSAs. *See* § 3–2.334 (1993) (law school sabbatical program for AUSA's).

## CONCLUSION

Navarro, an admitted drug felon, seeks to use 5 U.S.C. § 3372 as an anodyne for the punishment his crimes have earned him. However, in so doing he is chasing an eidolon because § 3372 did not repeal or limit 28 U.S.C. § 543. The Attorney General can still appoint SAUSAs for more than the four-year limit imposed by § 3372. The district court erred when it held to the contrary.[5]

REVERSED.

---

**5.** We express no opinion upon and do not adopt the district court's analysis of the issues regarding the scope of § 2255, waiver by plea, or the reach of *Teague v. Lane.* To the extent that they may otherwise be seen to have precedental value, they are rendered moot by our holding today.

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a); 9th Cir. R. 34–4.