In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-3395

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANTHONY D. SMITH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-24—**J.P. Stadtmueller**, *Judge.*

ARGUED FEBRUARY 14, 2003—DECIDED APRIL 7, 2003

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and EVANS, *Circuit Judges*.

FLAUM, *Chief Judge.* After a jury trial, Anthony Smith was convicted of being a felon in possession of a 9mm semi-automatic handgun and of being a felon in possession of 17 rounds of unfired 9mm ammunition, both in violation of 18 U.S.C. § 922(g)(1). On appeal Smith argues that his indictment should be dismissed because an unauthorized attorney represented the government in the grand jury proceedings, and that his conviction should be vacated because the government unconstitutionally used one of its peremptory challenges to exclude a prospective juror because of his race. We affirm.

**I. BACKGROUND**

In January 2002 a federal grand jury returned a two-count indictment against Smith for being a convicted felon in possession of both a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). The details of Smith's arrest and trial are not germane to his appeal for he challenges only the government's use of an allegedly unauthorized attorney during his grand jury proceedings and its allegedly unconstitutional use of peremptory challenges during *voir dire*.

During Smith's grand jury proceedings, the federal government was represented by Special Assistant United States Attorney ("SAUSA") Nelson W. Phillips III. Prior to his appointment as SAUSA in May 2001, Phillips worked for the state of Wisconsin as an Assistant District Attorney for Milwaukee County. One of the conditions of Phillips's appointment stated that he would serve the federal government without federal compensation; instead, Phillips continued to receive an annual salary paid by the state of Wisconsin while reporting to and acting under the direction of the United States Attorney for the Eastern District of Wisconsin. Before trial Smith moved to dismiss the indictment against him on the grounds that Phillips's salary arrangement violated federal law and rendered Phillips an unauthorized government attorney whose appearance before the grand jury violated Fed. R. Crim. P. 6(d).

Smith arrives at his conclusion by the following logic. The Federal Rules of Criminal Procedure limit participation in grand jury proceedings to certain individuals, and Rule 6(d)(1) provides that "attorneys for the government" are among those who may be present. Under Rule 54(c) an "attorney for the government" may include "an authorized assistant of a United States Attorney," and 28 U.S.C. § 543(a) authorizes the Attorney General of the United

States to "appoint attorneys to assist United States attorneys when the public interest so requires." Attorneys duly appointed under § 543 are therefore qualified "attorneys for the government" who are permitted to appear before a grand jury according to Fed. R. Crim. P. 6(d)(1).

However, 28 U.S.C. § 548 requires that the Attorney General "shall fix the annual salaries of . . . attorneys appointed under § 543 of this title at rates of compensation not in excess of the rate of basic compensation provided for in Executive Level IV." Herein lies the problem, according to Smith. Although Phillips was duly appointed under § 543, his annual salary is not paid by the federal government, but by the state of Wisconsin. Since Phillips receives no federal salary, Smith argues that the Attorney General cannot be said to have "fix[ed] his annual salary" as required by § 548, and therefore Phillips's appointment is invalid. If Phillips's appointment under § 543 is invalid, then he is not an authorized "attorney for the government" under Fed. R. Crim. P. 6(d)(1) and should not have appeared to represent the government before the grand jury.

Smith moved the district court to dismiss the indictment against him without prejudice under the theory that the government's violation of §§ 548 and 543 deprived the trial court of jurisdiction over his case. The district court denied Smith's motion to dismiss after determining that Phillips's appointment under § 543 was valid and finding that § 548 neither prohibited the state of Wisconsin from paying Phillips's salary nor required the federal government to do so.

During *voir dire*, the government exercised six, and Smith ten, peremptory challenges toward prospective jurors. The government eliminated four white and two black prospective jurors with its challenges, and Smith objected to the government's dismissal of both of the black

individuals as unconstitutional under *Batson v. Kentucky*, 476 U.S. 79 (1986). As is required under *Batson* to rebut a *prima facie* showing that a peremptory challenge was exercised on the basis of race, the government explained that it eliminated one juror, Ms. Tanyette Cockcroft, based on her lip piercing, tattoos, and liberal arts background, and the other juror, Mr. Marvin Fann, because he made mistakes on his juror questionnaire that suggested an inability to follow simple instructions. Over Smith's objection the district court ruled that the government met its burden under *Batson* to provide a race-neutral reason for challenging the contested jurors, and that Smith had not shown that the government's reasons were pretextual. On appeal Smith insists that the government's use of its peremptory challenge against Mr. Fann amounted to unconstitutional race discrimination.

## II. DISCUSSION

### A.

Smith argues that his indictment should be dismissed without prejudice because at all times during his grand jury proceeding the government was represented by an unauthorized attorney, namely SAUSA Phillips. Both the government and Smith agree that Phillips was duly appointed to his post by the Attorney General of the United States as required by 28 U.S.C. § 543, but Smith contends that Phillips's failure to receive an annual salary fixed by the Attorney General and paid by the federal government violated 28 U.S.C. § 548, thereby invalidating his appointment under § 543. With Phillips's appointment thus flawed, Smith argues, Phillips was never an authorized "attorney for the government" and should not have been present during the grand jury proceedings. The narrow question now before us is whether the fact that Phillips's annual salary was set at zero by the Attorney Gen-

eral while Phillips continued to receive his state salary from Wisconsin has any effect on Phillips's status as an authorized SAUSA.[1] We review this question of statutory interpretation and construction *de novo. United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002).

Smith contends that § 548 requires appointed SAUSAs like Phillips to receive an annual salary fixed by the Attorney General of the United States and paid by the federal government, but the government maintains that § 548 only requires the Attorney General to fix the annual salary of United States attorneys at or below a certain level and does not require the federal government to pay the annual salary. In advancing his argument, Smith relies primarily on the statutory language of § 548, that the Attorney General "shall fix the annual salaries" of SAUSAs, but also submits that as a matter of public policy it is unwise for attorneys who represent the federal government to receive their salaries from another

---

[1] The legal dispute over who must sign an SAUSA's paycheck appears to be a question of first impression in this and other circuits, although it is not uncommon for states to lend their prosecutors to the federal government for appointment as SAUSAs while continuing to pay their salaries. The Ninth Circuit considered a related challenge to the validity of an SAUSA's appointment under § 543 and subsequent appearance before a grand jury in *United States v. Navarro*, 160 F.3d 1254 (9th Cir. 1998). However, the critical question in that case was whether an appointment term limit required by the Intergovernmental Personnel Act applied to SAUSAs appointed under § 543, and not whether an SAUSA was required to be paid from the federal coffers. Nevertheless, we find instructive to this case the comment of the court that "nothing in that history suggests an intention to weaken the Attorney General's authority to seek the aid of SAUSAs in an attempt to further protect the people of the United States against what has sometimes seemed to be a tidal wave of crime." *Navarro*, 160 F.3d at 1257.

source. Neither of Smith's arguments convince us that the current practice of appointing and compensating SAUSAs like Phillips runs afoul of the law or public policy.

Section 548 states that the United States Attorney General "shall fix the annual salaries" for SAUSAs "at rates of compensation not in excess of the rate of basic compensation provided for in Executive Level IV." Smith argues that since the language "shall fix" is mandatory, the fact that Phillips received no federal salary is a clear violation of the statute. We disagree. Section 548 plainly requires the Attorney General to fix salaries at or below a certain level; this evidences a desire to establish a maximum salary cap for SAUSAs, not a minimum wage. In this case the Attorney General did "fix" Phillips's annual federal salary, at exactly zero dollars ($0). Strange as an annual salary of zero dollars may seem, there is nothing in § 548 to prohibit this result. In fact, the absence of language in the statute speaking to the issue of exactly how much government attorneys are paid and by whom indicates that Congress did not intend to specifically regulate this area. Section 548 is a general salary provision awarding the Attorney General some discretion, up to a designated pay ceiling, to determine the salaries of the government attorneys whom he or she supervises. Moreover, there is nothing in § 548 that would lead us to conclude that government attorneys, including SAUSAs, are prohibited from receiving income from other sources. This is not to say that a government attorney may accept any amount of compensation from any source without restriction; however, other statutes addressing the topic of a federal employee's receipt of income from outside sources do not cast doubt on the propriety of SAUSA Phillips receiving his salary from the State of Wisconsin in this case. *See*, *e.g.*, 18 U.S.C. § 209(a) (limiting federal employees' receipt of income from "any source other than the Government of the United States, except as may be

contributed out of the treasury of any State, county or municipality" and penalizing private persons and entities who make such payments to federal employees in violation of the statute), and § 209(c) (making section inapplicable to "a special Government employee or to an officer or employee of the Government serving without compensation"); *see also* Ethics in Government Act, 5 U.S.C. App. §§ 501 (limiting outside earned income) and 502 (limiting outside employment).

Smith urges us to write a rule in this case requiring that all government attorneys be paid for their services solely by the federal government. He insists this is necessary to protect the integrity of the office of the United States Attorney and shield it from unsavory and improper influences. Smith doubts that other statutory safeguards, like the requirements that the Attorney General appoint each attorney and supervise his or her practice, and that all government attorneys must swear an oath to faithfully execute his or her duties, are sufficient defenses. We do not disagree that our judicial system might look very different if private persons and special interest groups directly paid the salaries of purportedly neutral government attorneys; indeed, we would be concerned about the potential for corruption, fraud and prosecutorial misconduct that Smith describes. But that is not the legal landscape we are viewing under the current statutory scheme, nor is it the situation we are facing here by allowing duly appointed SAUSA Phillips to submit to the authority of the Attorney General of the United States, to follow the policies and procedures of the United States Attorney for the Eastern District of Wisconsin, and to receive his salary from his former employer, the state of Wisconsin, while serving his appointment to the federal government.

Since Phillips was duly appointed by the power granted to the Attorney General under § 543, we hold that Phil-

lips's salary arrangement during his tenure as SAUSA was permissible under § 548 and that he was an authorized government attorney at all times during Smith's grand jury proceedings and trial. Because we find that Phillips was authorized to represent the government before the grand jury, we need not reach the issue whether a grand jury appearance by a government attorney whose appointment is defective under § 543 deprives the trial court of jurisdiction and requires dismissal of the tainted indictment even after the defendant was convicted at trial.

**B.**

Smith next urges us to vacate his conviction because the government exercised a peremptory challenge based on the race of a prospective juror. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court held unconstitutional the use of peremptory challenges on the basis of race and established a procedure for trial judges to use to evaluate whether a peremptory challenge was discriminatorily motivated. *Id.* at 96. A defendant must first show that the challenged juror belonged to a cognizable racial group and that the prosecutor removed the juror because of his race. The burden then shifts to the prosecution to provide a race-neutral reason for challenging the contested juror. If the trial court decides that the government's proffered explanation is legitimate, the burden shifts again to the defendant to show that it was in fact pretextual. The Supreme Court emphasized in *Batson* that trial judges should consider "all relevant circumstances" in making their determinations and should be in the best position to decide, given their "experience[ ] in supervising *voir dire*," whether the peremptory challenges were impermissibly based on race. 476 U.S. at 97.

We review the district court's factual findings related to Smith's *Batson* challenge for clear error. *Tinner v. United*

*Ins. Co. of America*, 308 F.3d 697, 703 (7th Cir. 2002); *United States v. Jordan*, 223 F.3d 676, 686 (7th Cir. 2000). We will not reverse the determination of the district judge unless the reason given for the challenge is "completely outlandish" or there is other clear evidence that proves it wrong. *See Tinner*, 308 F.3d at 703 (quoting *United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir. 1998)).

In this case we find no clear error in the district court's determination that the government did not use its peremptory challenge against Mr. Fann because of his race. The government explained, in response to Smith's objection during *voir dire*, that it excused Mr. Fann because he had made several mistakes on his juror questionnaire that suggested an inability to follow simple instructions. Smith asserts that this reason is pretextual because other white jurors who made mistakes on their questionnaires were not also struck. Though Smith correctly states that a comparison of similarly situated jurors is an appropriate factor for the trial judge to consider in determining discriminatory intent, it is only one of many permissible factors, and in this case it is not determinative. *See Coulter v. Gilmore*, 155 F.3d 912, 921 (7th Cir. 1998); *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1032 (2003) (examining discriminatory intent through comparison of venire members of different races). The record here shows that no other juror made as many mistakes on his or her questionnaire as Mr. Fann: two other jurors made two errors each and four jurors made one error each, but Mr. Fann made seven errors on his questionnaire.

We also note for comparison's sake the fact that the government used its final peremptory challenge to strike a white juror rather than the one black juror remaining in the pool. Though this fact alone does not defeat Smith's *Batson* claim, it is additional evidence that the government did not act with racially discriminatory intent in

selecting the jurors for Smith's trial. *See Batson*, 476 U.S. 79, 97 (stating that a pattern of strikes against black jurors might lead to an inference of discrimination). *See also United States v. Marin*, 7 F.3d 679, 686 n.4 (7th Cir. 1993) (noting that government's empaneling of other minority jurors bolstered credibility of government's race-neutral explanation for striking the contested minority juror); *United States v. Nichols*, 937 F.2d 1257, 1264 (7th Cir. 1991) (finding it relevant that black jurors were seated while government still had peremptory challenges available).

The government's reasons for using its peremptory challenges need not rise to the level justifying the use of a challenge for cause. *Batso*n, 476 U.S. at 97. During *voir dire* the government stated that "Mr. Fann's performance on his questionnaire" provided the reason for exercising its peremptory challenge. The district judge accepted this explanation, and given the evidence in the record supporting the government's reasons, we do not find the court's determination to be clearly erroneous.

## III. Conclusion

The district court properly determined that SAUSA Phillips was an authorized attorney for the government during Smith's grand jury proceedings and that the government did not unconstitutionally exercise its peremptory challenge toward Mr. Fann. Affirmed.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of
Appeals for the Seventh Circuit*
