NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0518n.06

No. 10-3723

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 18, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ORLANDO CARTER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | **OPINION** |
| _____ | ) | |

Before: **DAUGHTREY and ROGERS, Circuit Judges; and ZOUHARY, District Judge.**[*]

**ZOUHARY, District Judge.** Defendant-Appellant Orlando Carter was convicted on multiple counts of fraud, conspiracy, and false statements in relation to his mismanagement of Dynus Corporation, of which Defendant was the majority owner. He presents four arguments on appeal: (1) the district court erred when it denied his *Batson* challenge to an alleged racially motivated peremptory strike; (2) the district court failed to compel the attendance of two absent African-American venire members; (3) the district court improperly excluded relevant evidence necessary to his defense; and (4) the district court improperly admitted photos of his home. The alleged errors are not well-taken and we **AFFIRM** Defendant's conviction.

_____

[*]The Honorable Jack Zouhary, United States District Court for the Northern District of Ohio, sitting by designation.

1

Defendant's initial venire totaled seventy-two members, nine of whom did not appear for service. Two of those nine were African-American. Of the sixty-three venire members who appeared for service, three were African-American. Thirty potential jurors were excluded for cause, either before or following voir dire, leaving a jury pool of thirty-three. Defendant had twelve peremptory challenges and the Government had eight. The parties wanted four alternates for the trial, which meant that the jury would be three members short if both parties exercised all their peremptory challenges. To solve this issue, the Government volunteered to "pass on a couple of its peremptories . . . ." (App'x II at 365–66).

Had neither party used peremptory challenges, two African-Americans, Jurors 5 and 18, would have served on the actual jury. Defendant however exercised all twelve of his challenges, while the Government exercised just four. Three of the Government's challenges were against Caucasians and one against an African-American, Juror 18. Two African-Americans survived voir dire, and both ultimately served on the jury.

Nevertheless, Defendant challenged the Government's peremptory strike of Juror 18 under *Batson v. Kentucky*, 476 U.S. 79 (1986). Defendant also requested the district court to compel the two absent African-Americans to attend the venire, arguing their absence violated the Jury Selection and Service Act ("JSSA"). The district court denied both challenges.

## ANALYSIS

### Standard of Review

The district court's denial of Defendant's *Batson* challenge is reviewed with "great deference, under a clearly erroneous standard." *United States v. Copeland*, 321 F.3d 582, 599 (6th

Cir. 2003) (quotation omitted). Defendant's JSSA challenge is a mixed question of law and fact, which this Court reviews de novo. *United States v. Allen*, 160 F.3d 1096, 1101 (6th Cir. 1998). This Court reviews evidentiary rulings for abuse of discretion. *United States v. Blackwell*, 459 F.3d 739, 752 (6th Cir. 2006). However, evidentiary rulings based on interpretation of the Constitution are reviewed de novo. *Id.*

### *Batson* Challenge

*Batson* claims involve "a tripartite burden-shifting inquiry." *Braxton v. Gansheimer*, 561 F.3d 453, 458–59 (6th Cir. 2009) (quotations and citations omitted):

> First, the party opposing the peremptory challenge must make a prima facie showing of racial discrimination. If such a case is established, the burden shifts to the defending party to articulate a race-neutral explanation for striking the juror in question. The party's reason for its decision to dismiss a juror is neutral if it is based on something other than the race of the juror and, absent discriminatory intent inherent in the explanation, the reason should be deemed race-neutral.
>
> * * *
>
> Once the defending party proffers a race-neutral reason, the challenging party, who always bears the ultimate burden of persuasion, must show that the explanation is merely a pretext for a racial motivation.

Defendant made his prima facie showing of racial discrimination and the district court asked the Government for its race-neutral reason for excluding Juror 18.

The Government responded that it excluded Juror 18 because she lacked the sophistication needed to evaluate the evidence. Specifically, Juror 18: (1) was not a high school graduate; (2) rented and had no experience with mortgages; (3) filled out her juror questionnaire in a way that indicated she would not be able to understand the evidence; and (4) worked as a nurse's aide (*i.e.*, errands, personal care and light housekeeping), a job that is not intellectually challenging. Exclusion

3

based on these reasons is race-neutral. *See, e.g.*, *United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002) (employment status); *United States v. Campbell*, 317 F.3d 597, 605–06 (6th Cir. 2003) (education); *United States v. Katuramu*, 174 Fed. App'x 272, 275 (6th Cir. 2006) (lack of home ownership); *United States v. Smith*, 324 F.3d 922, 927 (7th Cir. 2003) (mistakes on juror questionnaire).

Further, the Government's rationale was not mere pretext. Whether there is mere pretext depends upon "the persuasiveness of the prosecutor's justification for his peremptory strike." *Miller-El v. Cockrell*, 537 U.S. 322, 338–39 (2003). Persuasiveness is "measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.* at 339.

Another factor this Court may consider is whether "the final jury sworn has a percentage of minority members that is significantly less than the percentage in the group originally drawn for the jury . . . ." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1521–22 (6th Cir. 1988). If the percentage of minority jurors in the final jury is greater than the percentage in the original jury pool, then discriminatory purpose tends to be negated. *Id.* at 1522. If minorities remain in the jury and the Government did not use all its strikes, then discriminatory purpose is less likely. *Id.* Both factors are present here.

Of the sixty-three potential jurors appearing, three were African-American (4.7%). One African-American was struck by the Government. The final twelve-member jury contained one African-American (8.3%). The first alternate was also an African-American. Because a juror was excused during the course of the trial, the total number of African-Americans that actually served on the jury was two (16.6%). Unlike those cases in which the Supreme Court found a *Batson*

4

violation, these percentages do not support Defendant's *Batson* claim. *See, e.g.*, *Snyder v. Louisiana*, 552 U.S. 472, 475–76 (2008) (100% -- five -- African-Americans struck); *Miller-El v. Dretke*, 545 U.S. 231, 240–41 (2005) (91% -- ten of eleven -- African-Americans struck); *Batson*, 476 U.S. at 83 (100% -- four -- African-Americans struck).

Furthermore, the Government used its other peremptory challenges to strike jurors similar to Juror 18, evidencing the Government's non-discriminatory motive. *See United States v. Simon*, 422 Fed. App'x 489, 495 (6th Cir. 2011). Here, the Government struck four jurors -- Jurors 8, 18, 27, and 31 -- three of whom failed to finish high school. Only one juror who failed to complete high school remained, Juror 34. Because Juror 34 was Caucasian, Defendant argues the strike of Juror 18 was discriminatory. However, credible differences between Jurors 18 and 34 have enough "basis in accepted trial strategy" to survive a *Batson* challenge. *Miller-El*, 537 U.S. at 339

One other distinction remains. Since jurors were running short, and the Government had already indicated it would not use all its peremptories in order to accommodate voir dire, it makes perfect sense for the Government to strike lower-numbered jurors, since the higher-numbered jurors may not be seated. At the time the Government used its strikes, Juror 18 was eleventh in the jury pool and, if not struck, would have been on the jury. By comparison, Juror 34 was twentieth in the pool and, after the Government's four strikes, would have been the fourth alternate (*see* App'x II at 366 & 368). The Government did not know how many strikes Defendant would use and had no way of telling whether Juror 34 would serve on the jury (App'x II at 368). The Government struck no juror higher than 31 and its conservative use of strikes paid off because, after the jury and alternates were picked, there was only one member of the venire remaining. These circumstances cut against

5

any purposeful discrimination by the Government, and accordingly the Government's strike of Juror 18 did not violate *Batson*.

**Challenge to the Venire**

The district court did not violate the JSSA by failing to compel two African-American jurors to attend the venire. To prove a violation of the Act, Defendant must show that the selection of the venire failed to substantially comply with the Act. "A substantial failure is one that contravenes one of the two basic principles of the Act: (1) random selection of jurors, and (2) determination of juror disqualification, excuses, exemptions, and exclusions on the basis of objective criteria." *Allen*, 160 F.3d at 1102 (quotation omitted). Here, there is no "substantial failure" to comply with the Act.

In order to establish a prima facie case for a violation of the fair cross-section requirement, Defendant must allege: (1) the excluded group is "distinctive;" (2) the group is not a fair representation of the community; and (3) underrepresentation was due to a systematic exclusion by the court. *Allen*, 160 F.3d at 1103 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Applying these factors, the district judge denied Defendant's motion. We agree with the district court's conclusion. Defendant is "not entitled to a jury of any particular composition," only to a panel from which distinctive groups were not systematically excluded. *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). A "systematic exclusion" is one that is "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366. The district court's decision not to compel African American no-shows to appear for venire was not a systematic exclusion. The district court is under no obligation to compel no-shows. *See United States v. Gometz*, 730 F.2d 475, 480 (7th Cir. 1984) (citing 28 U.S.C. § 1864(a) for the proposition that the court may, but is not required to

6

summon no-shows). Moreover, Defendant's request to compel a select few of the no-shows creates additional due process problems, as conceded by defense counsel at oral argument.

**Exclusion of Testimony**

Defendant appeals the exclusion of testimony from Thomas Rowe, corporate counsel for Dynus. At trial, Rowe testified that he first learned about a fraudulent letter purportedly closing a deal between Dynus and Butler County at a meeting with National City in September 2005. Based on that meeting, National City presented Rowe with a demand to return money lent to Dynus to complete the Butler County project. Rowe informed Defendant about the letter and the demand. Rowe's testimony regarding Defendant's attempts to investigate and remedy the apparent fraud was excluded under Federal Evidence Rule 403.

A defendant's intention to repay the victims of fraud is no defense. *United States v. Daniel*, 329 F.3d 480, 488 (6th Cir. 2003). Likewise, subsequent investigations, repayments, or settlement attempts shed no light on whether a defendant had a previous intent to defraud. These efforts have "at best . . . small probative value for the purpose of showing lack of evil intent." *Hayes v. United States*, 227 F.2d 540, 543 (10th Cir. 1955).

Defendant's subsequent attempts to rectify the fraud are irrelevant to his earlier intent or state of mind, and the district court was within its broad discretion under Rule 403 to exclude that evidence. *United States v. Deitz*, 577 F.3d 672, 689 (6th Cir. 2009); *see also Badaracco v. Comm'r*, 464 U.S. 386, 394 (1984) (holding "a taxpayer who submits a fraudulent return does not purge the fraud by subsequent voluntary disclosure").

Neither did this exclusion prevent Defendant from presenting a meaningful defense. While the Constitution guarantees Defendant "a meaningful opportunity to present a complete defense,"

*Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The district court's compliance with evidence rules does not rise to a constitutional violation.

Even if the exclusion was erroneous, it was harmless. Multiple witnesses at trial indicated Defendant knew of the fraud -- through conversations, meetings, e-mail, and letters -- for over seven months. In light of this independent evidence, we are not "firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004) (citation and quotations omitted).

**Admissibility of Photos**

The district court admitted thirty photos of Defendant's home and property underlying the counts of mortgage fraud because the photos were probative of motivation, greed, and overreaching. The photos included views from a golf course, a gourmet kitchen, wine room, grand foyer, spiral staircase, swimming pool, basketball court, recreation room, and a gymnasium.

It was within the district court's discretion to admit these photos because evidence used to demonstrate motive for fraud is relevant. *See, e.g.*, *United States v. Jackson-Randolph*, 282 F.3d 369, 376–78 (6th Cir. 2002) (admitting evidence of jewelry, clothing, and several fur coats). Appeals to class bias, however, can be prejudicial. *Sizemore v. Fletcher*, 921 F.2d 667, 671 (6th Cir. 1990). This Court previously stated:

> [T]he line between statements that are appeals to class prejudice [that] are highly improper and cannot be condoned and statements regarding class that are relevant to the issues at hand is not easily drawn. It is especially difficult to draw when an accused's motivation is at issue, and when, as here, the alleged motivation is financial.

8

*Jackson-Randolph*, 282 F.3d at 377–78 (quotations omitted).

To determine where that line is, this Court laid out a three-part test, weighing the probative value of wealth evidence against its unfair prejudice. *Id.* at 378. We apply the test in cases where, as here, the district court failed to do so. *Id.*

Under the test, evidence is admissible if (1) "other credible evidence" of the illegal activity exists; (2) the "money spent was not available . . . from a legitimate source;" and (3) the "spending relates to the period of the alleged illegal activity." *Id.* The proof at trial satisfies all three elements of this test.

First, "other credible evidence" of Defendant's illegal activity existed, particularly the testimony of Dynus employees who helped Defendant create the fraudulent mortgage documents. Second, Defendant submitted false income information to obtain the loan to purchase the home, indicating the unavailability of a legitimate income source. Third, the fraud and the purchase of the home and property occurred at the same time. Thus, the photos were properly admitted.

## CONCLUSION

For the foregoing reasons, Defendant's conviction is **AFFIRMED**.